[300] Gaelasíd, J.
delivered the opinion of the court.
The plaintiffs allege they are the owners and proprietors of certain lots of ground, with the improvements and buildings thereon, situated in the city, of Lafayette, and have been in quiet possession thereof for upwards of fifteen years. That before they erected the stores and buildings on their lots they called on a sworn surveyor of the State, there being then none in the parish of Jefferson, to show them their lines and boundaries on. which to build. They further represent, that the city council of Lafayette have passed an arbitrary and oppressive ordinance or ordinances, directing the municipal officers to forcibly enter, turn them or their tenants out of their stores and houses, and that Benjamin Buisson, surveyor of the said city, and other persons are about to execute the order or orders, whereby they will be irreparably injured, and a pecuniary loss of more than $300,000 will be sustained. The petition then proceeds to the description of each lot of ground, naming the persons to whom it belongs: which lots are all in what are generally called the suburbs Lafayette and Livaudais, fronting on Levees-treet and running from it across the levee and batture outside of it, to the low-water mark, all. of which will appear from their titles and plans.
They further allege they have requested the city council and their officers to desist from their illegal acts, but they persist in their determination to pull down the houses and take the ground; wherefore they pray they may ha enjoined from destroying their property and disturbing them in the possession and enjoyment of it, which injunction they pray may be made perpetual and ten thousand dollars damages be allowed them.
To this petition and injunction the defendants answered by a general de • *549 nial, and an averment that the city council have power by law to make all necessary rules and regulations respecting the streets, roads, ditches, bridges and highways; also to repair old levees and construct new ones when necessary, and have authority to take such measures as may be proper to effect those objects. They pray a dissolution of the injunction and for twenty [301] thousand dollars damages.
The evidence shows, that the plaintiffs have acts of sale, and are possessors of the lots and buildings mentioned in their petition, for different periods. Some for two years, others for fourteen or fifeen years, and others for shorter periods. It is also shown, that the president of the council had- notices served on him, requiring, that within thirty days they remove all the encumbrances, obstructions and buildings on the line of the levee, ordained by the council, in front of and through their property, according to the plan made by the city surveyor, who was ordered to show them the lines, when called on; and it is also shown, that a number of houses were demolished, and those belonging to the plaintiffs threatened with demolition. Buckman, a witness for the plaintiffs, after stating various facts, confirming the previous statements of other witnesses in relation to their possession and rights, says, the banks of -the river have been gradually washing away, in consequence of the action of the water, produced by the steamboats passing near the shore, but the condition of the levee has generally been good until the previous high stage of water, when it ran over in several places. The evidence on the part of the defendants shows, that on the 18th of Juno, 1840, the committee of the council on streets and landing, reported to that body, that they had inspected the levee in front of the city, and find it in a precarious and weak condition on its whole line, but- very much so in front of the Faubourg Lafayette. That it has been broken down by being travelled on by drays, carts and other vehicles, and in many places the water flows over it. After a thorough examination, the committee say, the safety of the cities 'of Lafayette and New Orleans requires a new and more substantial levee should bo constructed as soon as practicable. Upon the presentment of this report, the president of the council was authorized to summon the legal number of freeholders, to examine and inspect the old levee, and report whether a new one was necessary. Twelve freeholders were summoned, among whom were [302] Hanson and McG-arey, two of the plaintiffs. This jury met, and on the 2d of July, 1840, unanimously reported, that a new levee was necessary, and required along the whole front of the city. They say it can be immediately commenced in front of the Huns’ Faubourg, but advise a postponement as to fixing the line in front of the Faubourgs Lafayette and Livaudais, until Am gust, when the water shall be lower, and it can be better designated. On the presentation of this report, the city surveyor was directed to make a plan and specifications of the levee in front of the Huns’ Faubourg, and means were adopted to commence it forthwith. On the 6th of August, 1840, the jury again met for the purpose of designating the line of the levee in front of the Faubourgs Lafayette and Livaudais. After inspection, they were still unanimous as to the necessity of the new levee, and ten of the jurors concurred in the line, its base to be sixty feet in width “ from the break of the *550 bank of the river,” wherever that distance can be obtained without encroaching on the street. The levee to be run in a straight line on each square, commencing at St. Andrew-street, where it was to connect with the levee in front of the Huns’ Faubourg, and extend to the upper limit of the city. To this report, Messrs. Hanson and McGarey dissented, on the ground that sixty feet base was more than was necessary. They thought forty feet were sufficient, to be measured from low-water mark, extending to the top of the bank, and they say a levee so placed will be sufficiently durable and substantial. "We cannot forbear remarking here, that Messrs. Hanson and McGarey, when the levee was to be made in front of the Huns’ Faubourg, did not think sixty feet base too much, but in front of the Faubourg Lafayette, where, according to the evidence, the levee was worse than any where else, forty feet were sufficient, and they were to be taken from low-water mark, on a bank gradually wearing away by the abrasion of the river. What influence their interests had upon their judgments, it is not necessary now to decide. The council directed the levee to be made in conformity with the recommenda[808] tion of the majority of the jury, and shortly after commenced the work; the president and surveyor being vested with the necessary authority to remove obstructions and encumbrances. To arrest the council in the execution of this ordinance, is the purpose of this injunction.
From the plans of the Faubourgs Lafayette and Livaudais, it appears that in both of them the public road or levee street is laid off some distance from the edge of the bank of the river or the existing levee, and on each side of it a range of lots is laid out; those on the side next to the river running across the levee to low-water mark, measuring in some instances more than two hundred feet. On many of those lots, the buildings instead of being erected on the street, are on the end next to the bank of the river, close to the water’s edge, having a levee or embankment of an irregular height and base to protect them. Hot one of the plaintiffs have left more than thirty-five feet between their houses and high water, and some of them only fifteen feet and a few inches, others eighteen, twenty and twenty-five feet. Each one seems to have built very much at his own will, both before and since the incorporation of the city. The old levee has been cut down and destroyed, that buildings might be erected on its site, and every house now sought to be demolished, is in the whole or in part on the former levee, or entirely outside of it. The witnesses all testify to the inadequacy of the present protection from inundation. It is said that the water has run over the embankment in various places, that steamboats in passing, throw it over, and that the banks are falling in at different places. Buisson, the surveyor, says, that the projected levee is on or very nearly on the site of the old one, and in some places nearer the river. That in a few places the inside of the levee will be something more than sixty feet, in consequence of the irregular caving in of the bank.
About thirteen persons, owning about twenty lots, oppose the execution of this work, which all the other property owners appear to favor, and the question is, shall their will and interests prevail over that of the mass of the [804] property owners in that quarter, and the safety of the whole community 2
*551 In the course of the trial, the plaintiffs took a hill of exception, to the opinion of the court overruling a question propounded to the witness Bach, asking his opinion “ concerning the existence, extent and sufficiency of the old levee in comparison with the projected one.” The defendants objected on the ground that the “ discretion of the president and city council of the city of Lafayette, could not be inquired into by the courts.” The court sustained the objection on two grounds. First, that the question involved an inquiry into the propriety, expediency and necessity of the projected change in the levee, which the judge considered to be a matter within the discretion of the defendants, and that discretion could not be revised by him. Secondly, that the only matter for the court to consider was the expropriation of the property, and whether the defendants had kept within the limits of their charter in making the expropriation. "We think the judge was right in rejecting the evidence, but not for either of the reasons he gives for his opinion. The action of the plaintiffs, it appears to us, is an injunction to prevent a trespass and disturbance of an alleged possession, by the officers of the corporation, under an ordinance regularly enacted, the expediency of which is not denied; its illegal and oppressive character as to the plaintiffs is only alleged ; and as it appears, the corporation proceeded to summon a jury, to decide on the expediency and necessity of making the levee, under the Act of 15th of February, 1808 (1 Moreau’s Dig. p. 651), and that jury having decided in favor of it, we think their decision conclusive, as to the necessity, unless the nullity or illegality of their proceedings are put in issue, which has not been done.
The plaintiffs’ second bill of exception, we think, cannot be sustained, for the reasons stated in relation to the first; the object of the testimony offered being in effect the same.
The third bill of exception is more untenable than either of the others, as we cannot possibly see what the amount of moneys received by the [805] harbor master, or what has been expended by the defendants on the public road and levee, has to do with this controversy. It is irrelevant to the issues joined.
As to the fourth bill of exception, we think the judge did not err in admitting Buisson’s testimony, and the plan he presented. The object was to show where the old levee was, and thereby show that the plaintiffs were themselves trespassing on a place, the public had the use of, and of which the defendants were the administrators, and had the control. If on no other account, the evidence was admissible on the question of damages.
The use of the banks of navigable rivers is by law public, and on the Mississippi the levees are the banks. La. Gode, arts. 446, 448. This is a servitude, established for the public or common utility, and all that x'elates to it is x'egulated by particular laws ; and every propxietox-, adjacent to the shores of a navigable rivex-, is bound to leave sufficient space for the making or repairing levees, roads and other public or common works. Id. arts. 660 and 661. The principles here laid down have been long well established, even if positive legislation had not sanctioned them.
The subject of roads and levees has repeatedly occupied the attention of *552 the legislature, and in relation to both, many positive regulations have been made of a general and local character. Mo subject is more important.
The Act of February 16, 1808, Moreau’s Digest, vol. 1, p. 651, which forbids any one making new levees, without the authorization of a jury of freeholders, and imposes penalties for constructing works which shall hinder or obstruct the free use of the shores of the Mississippi, seems not to have excited much of the attention of the district judge or the counsel. The Act of the 18th of March, 1816, 2 Martin’s Digest, 594, (which by some strange omission is not in Moreau’s Digest at all,) and that of the 7th of February, 1829, Session Acts, p. 76, appears also to have escaped attention. These two [306] laws, portions of the first of which are re-enacted in the latter, are full and specific in relation to levees. The base and height are ordained. The third section of both laws directs how far the levee shall be from the water’s edge. In some situations it must be an arpent at least, and in all cases at least sixty feet, measuring “ from the summit of the bank.” Section 5 says, that the earth used in the construction or repair of a levee, shall be taken at least twenty feet from the base, on the side of the river. Every proprietor of land fronting on the river, is bound, at certain seasons, to keep a certain number of slaves to work upon the levee and keep it in repair. By the Act of the 30th of January, 1884, sect. 4, the police jury of the parish of Jefferson, independent of the general legislation on the subject, had special powers delegated to them in relation to the proportion, direction, makihg and repairing of levees, dikes, &c., and among them expressly the power of pulling down and removing all buildings and other encumbrances that may obstruct the levee or space between the levee and river.
' The charter of the city of Lafayette confers on them the entire control of the streets, levees, wharves, &c., subject to the restriction, that they shall not pass any ordinance which shall interfere with the rights of the public to the levee, bank of the river or batture. Acts of 1833, p. 146, sect. 10. The 12th section of the same act confers on the corporation all the powers granted to the mayor and city council of Mew Orleans, by the “ act concerning levees,” passed March 16th, 1830. Acts of 1830, p. 114. The powers granted by this act are very great, and authorize the demolition and removal of obstructions, at the expense of those who have erected them. By the Act of March 12,1836, Session Acts, p. 131, sect. 1, the city council are specially subrogated to all the powers of the police jury of the parish of Jefferson, within the limits of the city, and the 9th section of the same act again confers on them the power to prevent the obstruction of the streets and levees. If further power was necessary, it is given by the article 857 of the Louisiana [807] Oode, which authorizes the destruction of any works built on the banks of rivers, at the expense of those who claim them, and the owner of those works can prevent their being destroyed under any pretext of prescription or possession, even if immemorial.
This court has heretofore had occasion to act upon this question in the case of the Trustees of Natchitoches v. Coe, 3 Mart. N. S. 140, and directed the removal of a house that had been built on the bank of Red River, which interrupted the use of its banks, which are common to all men.
*553 If there be one provision of law clearer than any other, it is that no man has a right to take exclusive possession of the hanks of a navigable river, and appropriate them to his own use, and particularly of the banks of the Mississippi. He has no right to extend levees at his will and pleasure, or erect buildings and works that will obstruct the free use of the banks to all men, although the right of property is in him, as proprietor of the adjacent lands.
The Acts of 1816 and 1829, before referred to, having fixed sixty feet as the minimum distance at whioh a levee shall be placed from the summit of the bank, we cannot see in the proceedings of the city council any of that arbitrary and oppressive spirit so freely imputed to them. Although we do not hold them as a petty sovereignty, free from control, and making their discretion the law, yet we think they are charged with important public interests, and they who complain of them ought to present themselves as citizens, willing to comply with the laws, and showing a proper regard for the rights of their fellow-citizens.
The plaintiffs strongly insist upon a compensation in damages in the event of their buildings being destroyed and the ground taken to make a levee, and say they have been led into error by the ordinance of the city council of the 18th June, 1833, reserving only forty feet for a landing and tow-path, and the proceedings of the police jury of the parish of Jefferson. We think the character of that ordinance is not properly understood. The council say nothing about the construction of a levee, and although all was not re- [308] served, to which they were entitled, it does not follow that their rights were abandoned. But even if they had fixed forty feet as the space to be left, the plaintiffs have not respected the ordinance ; the evidence showing that not one of them has left that space, several of them are within twenty feet of the summit of the bank. The plaintiffs appear to have built their houses on the levee or outside of it; by doing so, they became themselves violators of law and of public rights, and must take the consequences of their own acts. The laws prohibiting the erection of buildings and works on the banks of navigable rivers, have been long enacted, and were in force before the plaintiffs made their establishments and purchases. We therefore think they are not entitled to damages; and if they were, it would not be just the corporation of Lafayette should pay the full amount of them, as the space sought to be opened, and the levee to be constructed, is for the public benefit, and not exclusively for that of the inhabitants of that city.
The district judge has, in our opinion, mistaken the character of this action ; it is not possessory, exclusively. Whilst we concur in many of the principles he has stated, and the reasons given, we cannot concur in the conclusion drawn from them. The judge thinks, because he oould not allow the defendants all they claim, that therefore he could not allow them any thing. We do not consider ourselves so closely restricted.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed; and this court proceeding to give such judgment, as in its opinion ought to have been given by the court below, do further order and decree, that the injunction issued herein be *554 dissolved, and the plaintiffs’ action dismissed; they paying the oosts of this appeal, and those in the district court.